1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   STEPHANIE G MINA,                      No. 2:17-cv-1381 DB

12            Plaintiff,

13        v.                                ORDER

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,
15

16            Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1]

20   Plaintiff's motion argues that the Administrative Law Judge's step two analysis and treatment of

21   the medical opinion evidence constituted error. For the reasons explained below, plaintiff's

22   motion is granted in part and denied in part, the decision of the Commissioner of Social Security

23   ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with

24   this order.

25   ////

26   ////

27

28   ────────────────────
     [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
     to 28 U.S.C. § 636(c).  (See ECF Nos. 4 & 6.)

On July 11, 2013, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on August 19, 2012. (Transcript ("Tr.") at 21, 225-46.) Plaintiff's alleged impairments included sleep apnea, depression, anxiety, fatigue, and joint swelling. (Id. at 263.) Plaintiff's applications were denied initially, (id. at 118-22, 130-34), and upon reconsideration. (Id. at 140-44.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on December 17, 2015. (Id. at 45-91.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 45-47.) In a decision issued on April 15, 2016, the ALJ found that plaintiff was not disabled. (Id. at 39.) The ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2.  The claimant has not engaged in substantial gainful activity since August 19, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3.  The claimant has the following severe impairments: major depressive disorder (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, unskilled work involving no public contact; and the claimant is limited to only occasional contact with fellow employees.
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7.  The claimant was born on April 27, 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

////

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 19, 2012, through the date of this decision (20 CFR 404.1502(g)).

(Id. at 23-39.)

On June 5, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's April 15, 2016 decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 6, 2017.  (ECF No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d 1072, 1075 (9th Cir. 2002).

////

////

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ erred at step two of the sequential evaluation; and (2) the ALJ's treatment of the medical opinion evidence constituted error.[2] (Pl.'s MSJ (ECF No. 21) at 17-26.[3])

I.     Step Two Error

Plaintiff asserts that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's agoraphobia was non-severe. (Id. at 24-26.) At step two of the sequential evaluation,

---

[2]  The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[3]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis

standard"); <u>Tomasek v. Astrue</u>, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff argues that "the ALJ completely disregards [plaintiff's] psychological impairment of panic disorder with agoraphobia." (Pl.'s MSJ (ECF No. 21) at 25.) That assertion is belied by the ALJ's decision, which stated:

> The evidence also documents the claimant's occasional diagnoses of panic disorder and agoraphobia. However, as discussed further hereafter, the totality of the medical and nonmedical evidence reasonably supports a finding that these conditions have been non-severe over any period of at least 12 consecutive months since the date of alleged onset of disability, and that the claimant's moderate mental impairments are primarily attributable to depression. Further consideration and discussion of the claimant's additional diagnoses mental impairments shall be subsumed hereafter under the undersigned's evaluation of the claimant's severe medically determinable impairment of depressive disorder.

(Tr. at 26.)

Plaintiff's argument that there is not a "total absence of objective evidence of severe medical impairment" with respect to plaintiff's agoraphobia should find more support. (Pl.'s MSJ (ECF No. 21) at 26.) In this regard, there is objective evidence that plaintiff suffered from agoraphobia that caused her impairment. (Tr. at 606.) However, any error by the ALJ in finding plaintiff's agoraphobia non-severe would have been harmless.

The reason such error would have been harmless is "because the ALJ discussed" plaintiff's agoraphobia in the context of his residual functional capacity analysis after finding that [plaintiff's] other mental disabilit[y] w[as] severe." <u>Lee v. Astrue</u>, 472 Fed. Appx. 553, 555 (9th Cir. 2012); <u>see</u> <u>also</u> <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017) (no step two error where "all impairments were taken into account"); <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

As noted above, the ALJ's found that plaintiff's depressive disorder was a severe medically determinable impairment. (Tr. at 23.) "Further consideration and discussion" of plaintiff's "additional diagnosed mental impairments" was "subsumed" in the ALJ's evaluation of

plaintiff's depressive disorder.  (Id. at 26.)  At step three, the ALJ found that plaintiff's "panic

disorder and agoraphobia," contributed to plaintiff's moderate limitation in social functioning.

(Id. at 28.)  At step four, the ALJ considered plaintiff's testimony that she "goes out of the house

'maybe once or twice per week,'" as well as plaintiff's anxiety, "panic attack symptoms,

primarily associated with leaving her residence," and "disabling panic attack symptoms when

leaving her home."[4]  (Id. at 30, 31, 32.)  Any error in finding plaintiff's agoraphobia non-severe at

step two was, therefore, harmless.

     Because plaintiff cannot show that the ALJ committed a harmful error, plaintiff is not

entitled to summary judgment on the claim that the ALJ erred at step two of the sequential

evaluation.

II.    Medical Opinion Evidence

     The weight to be given to medical opinions in Social Security disability cases depends in

part on whether the opinions are proffered by treating, examining, or nonexamining health

professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a

general rule, more weight should be given to the opinion of a treating source than to the opinion

of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a

treating doctor is employed to cure and has a greater opportunity to know and observe the patient

as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

F.2d 1059, 1063 (9th Cir. 1990).

     The uncontradicted opinion of a treating or examining physician may be rejected only for

clear and convincing reasons, while the opinion of a treating or examining physician that is

controverted by another doctor may be rejected only for specific and legitimate reasons supported

by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a

treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not

_____

[4]  "'Agoraphobia' is an 'abnormal fear of open, especially public, places.'"  Quarles v. Barnhart,
178 F.Supp.2d 1089, 1093 (N.D. Cal. 2001) (quoting Webster's II New Riverside Dictionary 87
(Houghton Mifflin Company 1988)).

accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff challenges that ALJ's treatment of the opinion offered by plaintiff's treating psychologist, Dr. Anna Martinez.[5]  (Pl.'s MSJ (ECF No. 21) at 17-23.)  The ALJ acknowledged that Dr. Martinez "issued a number of opinions (all co-signed by Stephen G. Rapaski, Ph.D.) regarding the claimant's mental functionality."  (Tr. at 35.)  The ALJ's decision then summarizes many of those opinions.  For example, the ALJ notes that on May 22, 2014, Dr. Martinez "issued a more comprehensive medical opinion, stating that the claimant [was] 'extremely' limited" in a number of respects.  (Id. at 35.)  Plaintiff was so limited that the ALJ concluded that the "severely restrictive assessment would effectively preclude all employment." (Id. at 36.)

"[O]n March 16, 2015, Dr. Martinez issued an additional opinion in which she characterized [plaintiff] as markedly limited in most work functions."  (Id.)  "On December 12, 2015, Dr. Martinez issued another opinion in which she stated that it is 'unlikely' that the [plaintiff] 'could cope with any type of work environment, especially one with a fast pace and project deadlines.'"  (Id.)  The ALJ ultimately afforded "little weight" to "the opinions of Dr. Martinez (as co-signed by Dr. Rapaski)" for the following reasons.  (Id.)

A.    Contrary to Balance of Medical Evidence

The first reason offered by the ALJ in support of the treatment of Dr. Martinez's opinion was the assertion that the "opinions of Dr. Martinez . . . run contrary to the balance of medical evidence."  (Id.)  Specifically, the ALJ cited to an April 2, 2012 "mental status examination" completed by Dr. Jessica Williams, a treating psychologist.  (Id.)  The mental status examination

---

[5]  The opinion of a specialist is generally entitled to greater weight than the opinion of a non-specialist.  See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a specialist about medical issues related to his or her area of specialty'" should be given greater weight).

is not an opinion provided by Dr. Williams.  Instead, it is a list of items to be evaluated during an examination, such as "Appearance," "Behavior," "Speech," "Thought," etc.  (Id. at 405.) Moreover, as acknowledged by the ALJ's decision, the mental status examination dates "5 months prior to the date of the alleged onset of disability" and years prior to Dr. Martinez's opinions.  (Id. at 36.)  The April 2, 2012 mental status examination findings are not a specific and legitimate reason to discredit Dr. Martinez's opinions.

      B.     Unremarkable Findings of Dr. Alysia Liddell

      The ALJ also cited to "unremarkable findings" from Dr. Alysia Liddell's October 6, 2013, examination in support of the assertion that Dr. Martinez's opinions were contrary to the balance of medical evidence.  (Id.)  Dr. Liddell's examination, however, found that plaintiff's mood was "severely depressed" and that plaintiff's "[a]ffect was congruent with mood."  (Id. at 540.)  Dr. Liddell also did not have the benefit of treating plaintiff, as did Dr. Martinez.  Nor did Dr. Liddell have access to Dr. Martinez's records, which were generated after Dr. Liddell's examination. Moreover, as stated by Dr. Liddell, Dr. Liddell's opinion "was based on a single interview which should be considered as supplemental to other mental health information[.]"  (Id. at 542.)

      C.     Dr. Michelina Regazzi's Findings

      The ALJ also supported the decision to discredit Dr. Martinez's opinions by relying on the February 29, 2016 examining opinion of Dr. Michelina Regazzi.  In this regard, the ALJ stated that although Dr. Regazzi's mental status exam and psychometric testing depicted "some abnormalities in mental function," they nonetheless "sufficiently support a finding that the claimant is capable of performing simple, unskilled work and of sustained concentration, persistence and pace in so doing.  (Id. at 36.)

      Aside from this conclusory sentence, the ALJ does not explain why Dr. Regazzi's opinion, based on a single examination that found some abnormalities in mental functioning, should serve to discredit multiple opinions of a treating physician.

////

////

////

D.    Dr. Martinez's May 9, 2014 Exam

The ALJ next supported the decision to discredit Dr. Martinez's opinions by stating that:

> . . . her own mental status findings from a May 9, 2014 exam . . . described the claimant as tearful and with 'slow responses' as well as complaints of memory problems, but also assessed the claimant as fully oriented, pleased and cooperative, with average intelligence. Further, she found the claimant coherent and logical with no evidence of thought disorder.

(Id.)

It is entirely unclear, however, why the ALJ believed the findings from this single exam are in any way inconsistent with Dr. Martinez's opinions. Moreover, as is true of the opinions of Dr. Liddell and Dr. Regazzi—each based on a single examination—it is important to remember that

> [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.").

E.    Inconsistency with CDIU Interview

Another reason given by the ALJ for discrediting Dr. Martinez's opinions was that:

> Dr. Martinez's March 2014 description of the claimant as suffering from panic attacks when she leaves her house is inconsistent with the claimant's February 2014 CDIU interview in which she acknowledges weekly gambling activity at a casino as a means of 'socializing' with friends.

(Tr. at 36.) Dr. Martinez's March 2014 opinion, however, reflects that Dr. Martinez was aware plaintiff was leaving her house. Specifically, the opinion reflects that Dr. Martinez began treating

10

1    plaintiff on December 20, 2013.  (<u>Id.</u> at 617.)  That plaintiff was seen once every three weeks.

2    (<u>Id.</u>)  That plaintiff's most recent visit prior to Dr. Martinez's opinion was February 26, 2014.

3    (<u>Id.</u>)  And that as part of plaintiff's "progress in treatment" plaintiff had "left home 1 or 2" times

4    since starting therapy.  (<u>Id.</u> at 619.)

5         F.     <u>Patient Advocate</u>

6         Finally, the ALJ's last reason for discrediting Dr. Martinez's opinions was the assertion

7    that

> Dr. Martinez's severely restrictive assessments of the claimant's functionality, when contrasted with the balance of the evidence depicting the claimant is (sic) much less limited in her mental functioning, are more consistent with the profile of a treatment provider who is advocating for her patient.

11    (<u>Id.</u> at 36.)  The ALJ provides no explanation or support for this finding.

12         While an ALJ "'may introduce evidence of actual improprieties,'" the ALJ "'may not

13    assume that doctors routinely lie in order to help their patients collect disability benefits.'"  <u>Lester</u>

14    <u>v. Chater</u>, 81 F.3d 821, 832 (9th Cir. 1995) (quoting <u>Ratto v. Secretary, Dept. of Health and</u>

15    <u>Human Services</u>, 839 F.Supp. 1415, 1426 (D. Or. 1993)); <u>see also</u> <u>Haulot v. Astrue</u>, 290 Fed.

16    Appx. 53, 54 (9th Cir. 2008) ("The ALJ, however, never pointed to any evidence that Dr. Wallace

17    was so sympathetic to Haulot as to impair his sound professional opinion, or was acting as

18    Haulot's agent to aid him in collecting disability benefits.  The ALJ's statement that Dr. Wallace

19    was 'sympathetic' to Haulot therefore does not constitute substantial evidence for rejecting the

20    treating doctor's considered diagnosis.").

21         For the reasons state above, the court finds that the ALJ failed to provide specific and

22    legitimate reasons supported by substantial evidence in the record for rejecting Dr. Martinez's

23    opinions.  Accordingly, plaintiff's motion for summary judgment is granted on the claim that the

24    ALJ's treatment of the medical opinion evidence constituted error.

25                               CONCLUSION

26         After having found error, "'[t]he decision whether to remand a case for additional

27    evidence, or simply to award benefits[,] is within the discretion of the court.'"  <u>Trevizo v.</u>

28    <u>Berryhill</u>, 871 F.3d 664, 682 (9th Cir. 2017) (quoting <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232

| | |
|---|---|
| 1 | (9th Cir. 1987)).  A case may be remanded under the "credit-as-true" rule for an award of benefits |
| 2 | where: |

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, although the ALJ's treatment of Dr. Martinez's opinions was erroneous, there is considerable evidence that must be reconciled.  Accordingly, the court cannot find that further administrative proceedings would serve no useful purpose.  This matter will, therefore, be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 24) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

////

////

////

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 5, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\mina1381.orddlb